**GRANT & EISENHOFER P.A.**
Olav A. Haazen (OH7788)
Alice Y. Cho (AC0728)
Romina Corral (5755376)
485 Lexington Ave., 29th Fl.
New York, NY 10017
Tel: (646) 722-8500
ohaazen@gelaw.com
acho@gelaw.com
rcorral@gelaw.com

*Attorneys for Applicant*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re *Ex Parte* Application of QIC LTD., <br><br>               Applicant, <br><br> For an Order Granting Leave to Obtain Discovery from DEUTSCHE BANK AG NEW YORK BRANCH and DEUTSCHE BANK TRUST COMPANY OF THE AMERICAS, <br><br>               Respondents, <br><br> For Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | Misc. Action No.: 23-mc-355 <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782** |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I. PRELIMINARY STATEMENT ................................................................. 1

II. FACTUAL BACKGROUND .................................................................... 3

    A. RELEVANT PARTIES ....................................................................... 3

    B. INVESTIGATIONS AND PROCEEDINGS AGAINST DANSKE IN CONNECTION WITH DANSKE'S MONEY LAUNDERING ACTIVITIES .................................. 4

    C. INVESTIGATIONS AND PROCEEDINGS CONCERNING DEUTSCHE BANK'S KNOWLEDGE OF DANSKE'S MONEY LAUNDERING ACTIVITIES.............................. 7

    D. THE NATURE OF THE FOREIGN PROCEEDINGS ........................................... 9

III. ARGUMENT ....................................................................................... 12

    A. APPLICABLE STANDARDS ................................................................. 12

    B. THE APPLICATION MEETS ALL STATUTORY REQUIREMENTS ................................. 14

    C. THE DISCRETIONARY FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING THE APPLICATION ................................................................................. 15

        1. Granting Discovery Promotes the Twin Aims of Section 1782 .............. 15

        2. The Evidence Sought from Deutsche Bank U.S. Is Beyond the Danish Courts' Jurisdictional Reach........................................ 18

        3. The Applicant Seeks Information Essential to Foreign Proceedings and Nothing Indicates the Foreign Tribunal Would Not Be Receptive to the U.S. Court's Assistance ................................ 19

        4. This Application Does Not Circumvent Danish Proof-Gathering Restrictions or Other Policies ................................ 21

        5. The Discovery Sought Is Narrowly Tailored to the Needs of the Danish Actions, and Is Neither Burdensome Nor Unduly Intrusive ........ 23

IV. CONCLUSION.................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)..................................................15

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*,
No.18-CV-10364-LGS-SDA, 2022 WL 2168916 (S.D.N.Y. June 16, 2022) .........................16

*In re Ambercroft Trading Ltd.*,
No. 18-MC-80074-KAW, 2018 WL 286744 (N.D. Cal. June 11, 2018) .................................12

*In re Atvos Agroindus. Inv. S.A.*,
481 F. Supp. 3d 166 (S.D.N.Y. 2020)..................................................18

*In re Banco Santander (Brasil) S.A.*,
No. 22-MC-00022 (ALC), 2022 WL 1546663 (S.D.N.Y. Apr. 6, 2022) ...............................20

*In re Bloomfield Inv. Res. Corp.*,
315 F.R.D. 165 (S.D.N.Y. 2016) ..................................................22

*In re BNP Paribas Jersey Tr. Corp.*,
No. 18-MC-00047, 2018 WL 895675 (S.D.N.Y. Feb. 14, 2018) ............................................21

*Cal. State Tchrs. Ret. Sys. v. Novo Nordisk, Inc.*,
No. CV1916458FLWDEA, 2020 WL 6336199 (D.N.J. Oct. 29, 2020) ................................20

*CFE Int'l LLC v Denham Cap. Mgmt. LP*,
No. 22-MC-91355-FDS, 2022 WL 19558086 (D. Mass. Oct. 17, 2022) ...............................12

*In re Douglas Frederick*,
No. 20-MC-965-RP, 2020 WL 13190169 (W.D. Tex. Oct. 2, 2020).....................................12

*Euromepa S.A. v. R. Esmerian Inc.*,
51 F.3d 1095 (2d Cir. 1995)..................................................14, 20

*Foden v. Gianoli Aldunate*,
3 F.3d 54 (2d Cir. 1993)..................................................21

*Forsta AP-Fonden v. St. Jude Medical, Inc.*,
No.12-CV-3070 (JNE/HB), 2015 WL 13687909 (D. Minn. June 24, 2015) .........................16

*In re Gorsoan Ltd.*,
No. 13 Misc. 397 (PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014)...............................22

*Gorsoan Ltd. v. Bullock*,
　　652 F. App'x 7 (2d Cir. 2016) ................................................................................18

*In re Guo*,
　　965 F.3d 96 (2d Cir. 2020) ....................................................................................13

*Gushlak v. Gushlak*,
　　486 F. App'x 215 (2d Cir. 2012) ...........................................................................12

*Haarslev Indus., A/S v. Hans-Henrik Nissen*,
　　No. 18-09009-MC-W-ODS, slip. op. (W.D. Mo. May 22, 2018) ..........................20

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　　542 U.S. 241 (2004).......................................................................................*passim*

*Kiobel v. Cravath, Swaine & Moore LLP*,
　　895 F.3d 238 (2d Cir. 2018).................................................................................13

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
　　62 F. Supp. 3d 358 (S.D.N.Y. 2014)......................................................................18

*In re Ltr. of Req. for Int'l Jud. Assist. from the Dist. Ct. of Lyngby, Denmark*,
　　No. 13 CV00919 919 (N.D. Ill. Feb. 5, 2013) ......................................................20

*Marubeni Am. Corp. v. LBA Y.K.*,
　　335 F. App'x 95 (2d Cir. 2009) .............................................................................15

*Mees v. Buiter*,
　　793 F.3d 291 (2d Cir. 2015).............................................................................*passim*

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
　　No. 8-CV-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .............................21

*In re OOO Promnefstroy*,
　　No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ..................18, 19

*In re Operacion y Supervision de Hoteles*,
　　No. 14 Misc. 82 (PGG), 2015 WL 82007 (S.D.N.Y. Jan. 6, 2015).......................18

*Optimal Invs. Servs. S.A. v. Berlamont*,
　　773 F.3d 456 (2d Cir. 2014)..................................................................................12

*In re Patokh Chodiev & Int'l Min. Res. B.V.*,
　　No. 18-MC-13 (EGS), 2021 WL 3270042 (D.D.C. Feb. 15, 2022) ......................13

*In re Req. for Int'l Jud. Assist. from the Dist. Ct. of Kolding, Denmark – Matter of Mette
Lohse Skou Jensen v. Dwight Ferguson*,
　　No. DK-7000, No. 15-MC-73 (W.D.N.C. May 4, 2015).......................................20

iii

*In re Schottdorf*,
    No. 8-CV-269, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ..........................................21, 23

*In re Servicio Pan Americano*,
    354 F. Supp. 2d 269 (S.D.N.Y. 2004).......................................................................................22

*In re Shervin Pishevar*,
    439 F. Supp. 3d 290 (S.D.N.Y. 2020)..............................................................................20, 22

*In re Sveaas*,
    249 F.R.D. 96 (S.D.N.Y. 2008) ...............................................................................18, 23, 24

*Xie v. Lai*,
    No. 19-MC-80287-SVK, 2019 WL 7020340 (N.D. Cal. Dec. 20, 2019)................................12

*In re YS GM Marfin II LLC*,
    No. 20 MISC. 182 (PGG), 2022 WL 624291 (S.D.N.Y. Mar. 2, 2022)................................21

**Statutes**

28 U.S.C. § 1782................................................................................................... *passim*

Fed. R. Civ. Proc. Rules 26, 30, and 45 .......................................................................25

Applicant QIC Ltd. ("Applicant") respectfully submits this Memorandum of Law in support of its *Ex Parte* Application pursuant to 28 U.S.C. § 1782 ("Application") for an order granting leave to issue subpoenas for deposition testimony and production of documents by Deutsche Bank AG New York Branch and Deutsche Bank Trust Company of the Americas (a U.S. subsidiary of German corporation Deutsche Bank AG) (together, "Deutsche Bank U.S." or "Respondent(s)") for use in a foreign proceeding.

## I.   PRELIMINARY STATEMENT

The Application seeks discovery from Deutsche Bank U.S. for use in litigation ("Danish Actions") against Danske Bank A/S ("Danske") in Copenhagen City Court and the Eastern High Court in Denmark (the "Danish courts").  The Danish Actions are based on a series of money laundering activities over a nine-year period from 2007 through 2015 by Danske's Estonian branch ("Danske Estonia"), which has been referred to as the largest money laundering scandal in world history, involving an astounding $234 billion worth of suspicious transactions.  Deutsche Bank U.S. and its parent company in Germany, Deutsche Bank AG (collectively, "Deutsche Bank"), had knowledge of many of these illegal transactions and Danske's potential compliance violations, which were the subject of a Consent Order with U.S. authorities entered into and agreed by Deutsche Bank on July 6, 2020.

The deposition testimony and documents the Applicant seeks to obtain for use in the Danish Actions are critical in helping Applicant demonstrate that obvious red flags existed, which any normal bank would have been able to interpret, and that Deutsche Bank communicated its concerns to Danske – and thus prove Danske's own actual or constructive knowledge, wrongdoing and liability.

The Applicant's deposition testimony topics and document requests are listed in Schedule A to Subpoenas attached as **Exhibits H, I, J** and **K** ("Subpoenas") to the Declaration of Alice Y.

1

Cho, Esq., dated September 29, 2023 ("Cho Decl."), submitted herewith.  The document requests seek three categories of documents related to: (i) communications between Deutsche Bank and Danske concerning or related to specific suspicious transactions involving Danske Estonia's non-resident customer accounts, or mentioning actual or potential instances of money laundering through Danske Estonia, during the period October 1, 2007 through October 7, 2015 (**Request #1**); (ii) communications between Deutsche Bank and Danske concerning or related to the high volume of anti-money laundering ("AML") alerts involving Danske Estonia's customers or the high-risk market segments serviced by Danske Estonia during the period October 1, 2007 through October 7, 2015 (**Request #2**); and (iii) complete files and all information produced by Deutsche Bank to the New York State Department of Financial Services ("DFS") regarding its investigation into Deutsche Bank's involvement with Danske Estonia (**Request #3**; together with Request #1 and Request #2, the "Requests").

Danish courts have no authority to compel Deutsche Bank AG, a German bank, nor its U.S. branches or affiliates (such as Deutsche Bank U.S.) – none of which is domiciled in Denmark – to produce documents relevant to the Danish Actions.  Given the limitations on discovery in Denmark, without access to the discovery requested here the Applicant has no means of obtaining the same probative evidence and, therefore, justice could be denied for the Applicant.  Respondent Deutsche Bank U.S. has possession, custody, or control of the requested materials, but lies beyond the jurisdictional reach and subpoena powers of the Danish courts.  The Applicant therefore properly invokes 28 U.S.C. § 1782 to obtain discovery from Deutsche Bank U.S. in the form of deposition testimony and production of documents.

Pursuant to Section 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing

for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." 28 U.S.C. § 1782(a). The Application satisfies each of Section 1782's three statutory prerequisites: (i) Deutsche Bank U.S. resides in this judicial district (as both Respondents are licensed by the DFS to operate in the State of New York and have corporate offices in New York State); (ii) the Danish Actions constitute a "proceeding in a foreign . . . tribunal"; and (iii) the Applicant is a Claimant in the Danish Actions, and thus an "interested person" entitled to seek assistance from this Court. *Id.*

The Applicant also satisfies the discretionary factors outlined by the U.S. Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241 (2004), because, as attested to in the Declaration of Lotte Noer, Esq., dated September 29, 2023 ("Noer Decl."), submitted herewith, (1) Deutsche Bank U.S. is not a named or contemplated party in the Danish Actions, and the Danish courts have no jurisdiction over it; (2) Danish courts have traditionally been receptive to assistance from U.S. courts in adjudicating disputes, and they will be receptive to evidence obtained through Section 1782 discovery; (3) the Application does not conceal an attempt to circumvent foreign proof-gathering restrictions but instead is a good-faith effort to obtain highly probative and critical information to the Danish Actions that the Applicant can only obtain via the requested Section 1782 order; and (4) the discovery sought is not unduly intrusive or burdensome. *See Intel,* 542 U.S. at 264-65.

For these reasons, the Applicant respectfully requests that the Court grant the Application.

## II.   FACTUAL BACKGROUND

### A.   RELEVANT PARTIES

Applicant QIC Ltd. is a corporation owned by, and incorporated in, the State of Queensland, Australia. Noer Decl. ¶ 9. The Applicant is an investor in Danske securities listed primarily on the NASDAQ Copenhagen stock exchange. The Applicant suffered significant losses

when between February and October 2018 the truth about Danske's money laundering fraud came out.  *Id*.

Respondent Deutsche Bank AG New York Branch is a New York State licensed branch of Deutsche Bank AG, a global financial institution incorporated and headquartered in Frankfurt, Germany.  Cho Decl., **Ex. A** (Consent Order) at 1.  The New York Branch has its corporate office at 60 Wall Street, New York, New York 10005.  *Id*. at 36.

Respondent Deutsche Bank Trust Company of the Americas is a trust company of Deutsche Bank AG that is licensed and supervised by DFS to operate in the State of New York.  *Id*. at 1.  The Trust Company has its corporate office at 60 Wall Street, New York, New York 10005.  *Id*. at 36.

Non-party Danske is a financial institution organized and licensed under the laws of Denmark and residing at Holmens Kanal 2-12, DK-1092, Copenhagen, Denmark.  Non-party Danske Estonia is a branch of Danske, located at Narva mnt 11, 15015, Tallinn, Estonia.

### B.    INVESTIGATIONS AND PROCEEDINGS AGAINST DANSKE IN CONNECTION WITH DANSKE'S MONEY LAUNDERING ACTIVITIES

Danske Estonia was the key player in one of the largest money laundering scandals in history.  Noer Decl. ¶ 4.  An independent investigation ordered by Danske's board of directors revealed that for a nine-year period, from 2007 through 2015, an astronomical $234 billion flowed through the bank as part of the money laundering scheme.  *Id*.  The resulting investigative report issued in September 2018 confirmed that Danske's central management had known about its money laundering activities for many years but attempted to cover them up.  *Id.* ¶¶ 4-5.  Once the fraud was publicly disclosed, Danske's stock lost over $12.8 billion in value and its CEO Thomas Borgen resigned.  *Id*. ¶ 6.

On March 14, 2019, the Applicant's Danish counsel filed a large number of claims against Danske in the City Court of Copenhagen, representing 168 institutional investors (including the Applicant) who collectively suffered approximately $470 million in stock market losses as a result of the series of revelations of Danske's money laundering fraud. *Id*. ¶ 8.  Between October 2019, and February 2021, additional institutional investors represented by the Applicant's Danish counsel filed further claims, which brought the total claim value in the Danish Actions to around $1 billion in losses suffered by over 300 claimants. *Id*.  The claimants, including the Applicant, allege that Danske's central management had knowledge of its branch's money laundering activities for years but took nearly two years to mitigate it and engaged in a years-long cover-up to keep the truth from financial regulators in Estonia and Denmark, and from its investors. *Id*. ¶ 10.

On December 12, 2022, Danske entered into a plea agreement with the U.S. Department of Justice ("DOJ"), agreeing to pay fines of over $2 billion (Cho Decl., **Ex. B** (Plea Agreement) at 18) as part of an integrated, global resolution with the U.S. Securities and Exchange Commission ("SEC"), the U.S. Attorney's Office for the Southern District of New York, and Denmark's Special Crime Unit, and implementing a compliance program and AML controls.  Cho Decl., **Ex. C** (SEC Press Release) at 2.  The Plea Agreement provided for fines payable to the DOJ in the amount of $1.209 billion, $178.6 million to the SEC, and $672,316,404 to the Danish Special Crime Unit of, for a combined total of around $2.06 billion. *Id*. & Noer Decl., **Ex. 2** (Danske Bank Press Release) at 2.

According to the Plea Agreement, Danske's "[Non-resident portfolio] customers conducted significant transactions in U.S. dollars using U.S. dollar accounts that Danske Estonia, with the knowledge of DANSKE BANK, maintained at various U.S. banks, including U.S. Bank

1 ("U.S. BANK 1"), U.S. Bank 2 ("U.S. BANK 2"), and U.S. Bank 3 ("U.S. BANK 3") [collectively, "U.S. Banks"], all federally insured financial institutions located in the Southern District of New York."  Cho Decl., **Ex. B** (Plea Agreement) at page A-3.  In response to requests from the U.S. Banks, Danske "misrepresented the state of Danske Bank Estonia's AML compliance program, transaction monitoring, and information regarding Danske Bank Estonia's customers and their risk profile, causing the U.S. Banks to maintain accounts, and U.S. Bank 3 to open an account, through which Danske Bank Estonia facilitated approximately $160 billion in transactions on behalf of its [non-resident portfolio] customers between 2007 and 2016."  *Id.* at page A-4.

The Applicant believes Deutsche Bank to be one of the three mentioned U.S. Banks.  Cho Decl. ¶ 14.

On December 13, 2022, the SEC announced fraud charges against Danske for misleading investors about its anti-money laundering compliance program in its Estonian branch and failing to disclose the risks posed by the program's significant deficiencies.  Cho Decl., **Ex. E** (SEC Cmplt.) ¶ 1.  The SEC Complaint alleged that "[f]rom at least 2009 to and including 2016, Danske, directly and through its branch in Estonia . . ., provided banking services to suspicious customers despite knowing there was a high degree of risk that such customers were potentially engaged in money laundering."  *Id*.  According to the SEC, Danske "knew or was reckless in not knowing of numerous red flags indicating that its employees and managers at Danske Estonia had, amongst other things, conspired with customers to circumvent the anti-money laundering ('AML') laws and regulations of the European Union, Denmark, and Estonia, and that Danske's internal AML and 'know your customer' ('KYC') safeguards were weak and ineffective."  *Id.*

The SEC Complaint also alleged that, while Danske knew of these high-risk transactions,

it "knowingly or recklessly made materially misleading statements and omissions in its publicly available reports . . . stating that Danske was compliant with its legal obligations to prevent its services from being used for illicit purposes – including money laundering – and that it had effectively managed these risks." *Id*. Further, Danske stopped providing services to its high-risk customers by April 2016 but failed to timely disclose to investors known misconduct and widespread AML failures. *Id*. When between September 2017 and November 2018 the full extent and nature of Danske's illegal activity became publicly known, Danske's share price dropped by almost 50%. *Id*.

### C. INVESTIGATIONS AND PROCEEDINGS CONCERNING DEUTSCHE BANK'S KNOWLEDGE OF DANSKE'S MONEY LAUNDERING ACTIVITIES

On July 6, 2020, the DFS entered into a consent order with Deutsche Bank ("Consent Order"). Cho Decl. ¶ 3 & **Ex. A**. The Consent Order refers to the relationship between Deutsche Bank and Danske, and Deutsche Bank's knowledge concerning money laundering taking place through Danske Estonia. Cho Decl., **Ex. A** (Consent Order) ¶¶ 60, 83-105. Specifically, the DFS found that by June 2008, Deutsche Bank was aware of Danske Estonia's issues concerning its non-resident customer accounts (*id.* ¶ 86) and that by "July 2009, Deutsche Bank was sufficiently concerned about AML risks posed by Danske Estonia that AML COMPLIANCE DIRECTOR-1 provided on-site training to Danske Estonia staff to address AML and [know-your-customer] KYC topics." *Id*. ¶ 88. The DFS further found that Deutsche Bank failed to maintain an effective and compliant anti-money laundering program in violation of NYCRR § 116.2, in connection with money laundering activities at Danske Estonia:

> Between 2007 and 2015, Deutsche Bank identified a total of 340 suspicious transactions that referenced Danske Estonia's U.S. dollar correspondent accounts. The high number of suspicious transactions, the history of high RAC scores, and various dialogues that the Bank had with its client concerning AML policies and controls, *put Deutsche Bank on notice that there were issues that required timely further action.* Despite this, the Bank maintained its relationship with Danske Estonia until October 7, 2015, a year in which

Deutsche Bank *identified 87 additional suspicious transactions* concerning Danske Estonia.

*Id.* ¶¶ 104-05 (emphases added).

Based on its findings of Deutsche Bank's knowledge of and shortcomings in connection with the money laundering activities at Danske Estonia, among other things, the DFS imposed a fine on Deutsche Bank of $150 million.  *Id*. ¶ 114.

On August 7, 2020, Jonathan W. Davenport ("Petitioner"), Senior Counsel at Grant & Eisenhofer P.A., U.S. counsel for the 300+ claimants in the Danish Actions, submitted a request to the Records Access Officer of the DFS pursuant to the Freedom of Information Law ("FOIL") and New York Public Officers Law ("POL"), Article 6 §§ 84, *et seq.* ("FOIL Request") for all documents related to the investigation by DFS of Deutsche Bank AG, Deutsche Bank AG New York Branch and Deutsche Bank Trust Company of the Americas' involvement with Danske Estonia.  Cho Decl. ¶ 6.

By letter dated April 26, 2021, DFS denied the FOIL Request in its entirety, despite averring that "the Department has records responsive to your request."  *Id*. ¶ 7.  Petitioner appealed this Initial FOIL Determination by letter dated May 26, 2021, arguing that DFS' determination was erroneous and that DFS failed to meet its statutory burden of providing a particularized justification for its denial and failed to disclose any responsive records with the confidential information redacted.  *Id*. ¶ 8.

By letter dated July 12, 2021, DFS denied the FOIL Appeal and withheld the responsive records from disclosure in their entirety on the ground that the requested records are exempt from disclosure.  *Id.* ¶ 9.  On November 12, 2021, Petitioner sought judicial review pursuant to Article 78 of the Civil Practice Law and Rules in New York's Supreme Court, and that appeal remains pending.  *Id*. ¶ 10.

8

In another related matter regarding Deutsche Bank's knowledge of Danske's money laundering activities at Danske Estonia, on July 19, 2023, the U.S. Federal Reserve Bank ("FRB") announced two enforcement actions against Deutsche Bank AG and its U.S. affiliates (including the two Respondents to this Application), in which the FRB issued a consent order and a $186 million fine based on unsafe and unsound practices and violations of the FRB's 2015 and 2017 consent orders with Deutsche Bank concerning its sanctions compliance and deficient AML controls in its relationship with Danske Estonia from 2007 through 2015.  Cho Decl., **Ex. F** (FRB Consent Order) at 3-4, 8.  The FRB Consent Order provides that $46 million of the $186 million fine "is assessed in connection with unsafe and unsound practices arising from governance and BSA/AML control failures relating to Deutsche Bank's and [its U.S. affiliate's] relationship with Danske Estonia."  *Id.* at 8.

The FRB's second enforcement action concerns a written agreement it entered into with Deutsche Bank on July 17, 2023 to address deficiencies relating to Deutsche Bank's governance, risk management and controls.  Cho Decl., **Ex. G** (FRB Written Agreement), at 2.

Thus, it is clear that a number of U.S. regulatory agencies have already found that Deutsche Bank knew about the same money laundering activities at Danske Estonia that form the bases of the Applicant's claims in the Danish Actions.

### D.    THE NATURE OF THE FOREIGN PROCEEDINGS

In the Danish Actions, the Applicant seeks compensation for losses caused by Danske's violations of its disclosure obligations pursuant to, *inter alia*, the Danish Securities Trading Act and the European Union's Market Abuse Regulation to inform the market in a timely manner about the extensive money laundering activities in Danske Estonia, as well as its failure to implement and enforce necessary procedures to prevent money laundering.  Noer Decl. ¶ 13.

The Danish Actions consist of over 300 cases filed in the Copenhagen City Court in Denmark, of which 196 cases were subsequently transferred to the Eastern High Court ("High Court"). *Id*. ¶ 11. From those cases, the parties and the High Court selected eight test cases to proceed before the High Court, while all other cases pending before the City Court are placed on hold until the High Court reaches a decision in the test cases. *Id*. ¶ 12. The Applicant is a claimant whose action continues before the High Court as a test case. *Id*.

On June 25, 2020, Danske submitted its Statement of Defense in the High Court, and the claimants replied on December 1, 2020. *Id*. ¶ 15. There have been several rounds of briefing regarding factual issues and the parties' legal positions. *Id*. Danish civil procedure does not have a separate evidence-gathering or "discovery stage," separated in time from a "pleading stage" and a "trial stage." *Id*. ¶ 21. Rather, Danish civil procedure is, like most civil law jurisdictions, a more continuous process whereby evidence-gathering and submitting proof to the court occurs throughout the life of the case, starting (preferably and frequently) before suit is brought (*i.e.* pre-action) and continuing through various stages of making proof, until final oral argument. *Id*. So far, the Danish Actions have been pending for more than four years. *Id*. ¶ 23. In accordance with Article 6 of the European Convention of Human Rights, one of the basic principles of due process requires that justice be done within a reasonable time. *Id*. Thus, the time to obtain and submit evidence in the Danish Actions is now. *Id*.

In fact, a rudimentary process of discovery of relevant documents in Danske's possession is underway. *Id*. ¶ 16. On November 23, 2022, the High Court ordered Danske to disclose many of the case-critical documents requested by the claimants for use in each of the continuing (*i.e.* non-stayed) cases. *Id*. On December 7, 2022, Danske sought permission to appeal the decision

on discovery to the Supreme Court, which request was denied by Denmark's Appeals Board on March 16, 2023. *Id.*

   In Denmark, compliance with discovery orders is not mandatory; the only sanction for non-compliance is the threat of adverse inferences, which are entirely within the Danish court's discretion. *Id.* Since the High Court's discovery order in November 2022, Danske has consistently informed the High Court and the claimants that it has not yet decided whether or not to comply with the Danish court's order. *Id.* ¶ 24. Due to Danske's failure to comply with the order more than six months later, on June 19, 2023, the claimants asked the High Court to set a quick deadline for Danske to produce the so-ordered discovery, and the court promptly ordered Danske to comply before the end of June 2023. *Id.* Danske failed to produce any documents by June 30 and thereafter, at Danske's request, the High Court set August 28, 2023, as the final deadline for Danske to comply with its discovery order. *Id.* By that deadline, Danske produced only 118 documents in response to the claimants' 89 requests but claimed to no longer be able to find six documents, which are believed to be of immense importance since they include updates to the now former CEO on the AML scandal. *Id.* These documents were reviewed by a law firm hired by Danske to conduct the independent investigation as part of Danske's 2018 own internal investigation into the money laundering at Danske Estonia. *Id.* The documents which Danske did in fact produce are heavily redacted even though the Eastern High Court on its November 23 Ruling only allowed for limited redaction (customer names, etc.). *Id.* It is undisputed that Danske has redacted more than the Eastern High court allowed; however, the bank is claiming that the redacted parts are of no interest to the case. *Id.* At a hearing in the Danish Actions on September 13, 2023, we asked the Court to draw an adverse inference against Danske for each category of

11

documents it failed to produce, which the Court indicated it will address at the time of trial. *Id.* This is customary in a Danish procedural context.. *Id.*

The discovery that the Applicant seeks from Deutsche Bank here is critical in helping it prove Danske's wrongdoing and liability, and is relevant to all eight test cases selected by the High Court in Denmark, the outcomes of which will be of integral importance to the hundreds of other cases in the Danish Actions that remain stayed pending resolution of the test cases. *Id.* ¶ 20.

The central question in the Danish Actions is Danske's duty to investigate the activities of its Estonian branch when various red flags concerning the branch appeared and became known. *Id.* ¶ 14. Thus, the Applicant has a significant and legitimate interest in demonstrating the existence (and Danske's knowledge) of such red flags, as identified by Deutsche Bank over the years. *Id.* ¶ 22. What was known or knowable (indeed obvious) to Deutsche Bank and communicated by it to Danske was *a fortiori* within Danske's own actual or constructive knowledge. *Id.* The contents of the documents and testimony that Applicant seeks in the United States thus support the Applicant's allegations in the Danish Actions that Danske had at least the same knowledge as Deutsche Bank of the extensive and years-long money laundering activities at Danske Estonia, and should have taken proper action based on this knowledge. *Id.*

The Applicant has immediate use for the discovery it seeks here and intends to use the evidence promptly after it is obtained with this Court's assistance. *Id.* ¶ 23.

## III.   ARGUMENT

### A.   APPLICABLE STANDARDS

As a preliminary matter, Section 1782 applications are permissible, and typically granted, *ex parte*. *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*"; "[t]he respondent's due process rights are not violated because he can later challenge any discovery

request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)") (citing *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 78 (2d Cir. 2012)).[1]

The purpose of Section 1782 is to enable parties like the Applicant to obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247.  Section 1782 authorizes the Court to grant discovery for use in a proceeding in a foreign or international tribunal if these mandatory requirements are met: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  *In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020).

Once the statutory requirements are met, as they are here, a district court "may grant discovery under § 1782 in its discretion." *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (citation omitted).  Courts must exercise this discretion in light of the "twin aims" of the statute: "providing efficient means of assistance to participants in international litigation . . . and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.*

Courts must also consider the discretionary factors outlined in *Intel*: whether (1) "the person from whom discovery is sought is a participant in the foreign proceeding" (in which case the foreign tribunal has jurisdiction over the person and can itself order that person to produce

---

[1] Courts in other circuits have also granted Section 1782 applications *ex parte*.  *See, e.g., CFE Int'l LLC v Denham Cap. Mgmt. LP,* No. 22-MC-91355-FDS, 2022 WL 19558086 (D. Mass. Oct. 17, 2022); *Optimal Invs. Servs. S.A. v. Berlamont,* 773 F.3d 456 (2d Cir. 2014); *Xie v. Lai,* No. 19-MC-80287-SVK, 2019 WL 7020340 (N.D. Cal. Dec. 20, 2019); *In re Ambercroft Trading Ltd.,* No. 18-MC-80074-KAW, 2018 WL 286744 (N.D. Cal. June 11, 2018); *In re Douglas Frederick,* No. 20-MC-965-RP, 2020 WL 13190169 (W.D. Tex. Oct. 2, 2020); *In re Patokh Chodiev & Int'l Min. Res. B.V.,* No. 18-MC-13 (EGS), 2021 WL 3270042 (D.D.C. Feb. 15, 2022).

evidence); (2) the nature of the foreign proceeding and tribunal, and if it is receptive to U.S. court assistance; (3) the request conceals an attempt to circumvent foreign proof-taking restrictions or other policies of the foreign country or the United States; and (4) the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65.

The Application meets all statutory requirements, is directly in line with the twin aims of the statute, and all discretionary factors weigh decidedly in favor of granting the Application.

### B.   THE APPLICATION MEETS ALL STATUTORY REQUIREMENTS

All prerequisites for a Section 1782 request are met in this case. *First*, both Respondents reside or can be found at 60 Wall Street, New York, NY 10005, and are therefore within this District. Cho Decl. ¶¶ 4-5. *Second*, the City Court of Copenhagen and the Eastern High Court of Denmark are both civil trial courts that are first-instance decisionmakers within the Danish legal system (Noer Decl. ¶ 2) and each therefore qualifies as a "tribunal" under Section 1782. *Intel*, 542 U.S. at 257-58 (tribunals include courts that are "first-instance decisionmaker[s]"). *Third*, the Applicant seeks the requested discovery for use in the Danish Actions, which are civil damages actions pending before a foreign trial court. Noer Decl. ¶ 2. (Excerpts from a sample Statement of Claim in the Danish Actions are attached to the Noer Declaration as **Exhibit 3** with an English translation as **Exhibit 4**.) *Fourth*, the Applicant clearly qualifies as an "interested person," as it is a claimant in the Danish Actions bearing the burden of proof on the elements of securities fraud (Noer Decl. ¶¶ 9, 14), and thus has a significant and legitimate interest in seeking the probative evidence it seeks here. Noer Decl. ¶ 22; *see also Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782").

14

**C.     THE DISCRETIONARY FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING THE APPLICATION**

### 1.     Granting Discovery Promotes the Twin Aims of Section 1782

A district court's discretion must be guided by several factors—including, in particular, the twin aims of the statute: "promoting efficiency in international litigation and persuading other nations, by example, to do the same." *Euromepa S.A. v. R. Esmerian Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995); *see also Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 96 (2d Cir. 2009).  Taking into account these objectives, "[t]he availability of Section 1782 discovery . . . is quite broad and only has broadened through successive amendments over the years." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017) (citing *Intel*, 542 U.S. at 247-49 (recounting changes in various amendments)).  Indeed, these policies alone "should generally prompt district courts to provide some form of discovery assistance." *Id.*

Here, granting the requested discovery unquestionably promotes Congress' objectives. Granting discovery would be an efficient means of assisting the claimants, including the Applicant, in the Danish Actions in meeting their burden of proof, particularly because the Respondents have already gathered it in response to the DFS's inquiry and have a full production set ready that it can easily and efficiently reproduce here.  All discovery sought here is relevant and narrowly tailored to the Applicant's probative needs in the Danish Actions.  Specifically, the documents and testimony the Applicant wishes to elicit from Deutsche Bank U.S. are already known to include evidence of Danske's actual or constructive knowledge and subsequent cover-up of the long-lasting and far-ranging money laundering activities at Danske Estonia (Cho Decl., **Ex. A** (Consent Order) ¶¶ 60, 83-105), which is the exact same factual basis as the Applicant's allegations and complaints of Danske's wrongdoing and liability in the Danish Actions.  Noer Decl. ¶¶ 10, 14, 20,

22.  There is no other more efficient way for the Applicant to obtain this evidence from Deutsche Bank, DFS, or Danske.  *Id*. ¶ 27.

Supporting the statute's second aim, the example set by the United States has led to a two-way street with Danish courts returning the favor.  Noer Decl. ¶ 32.  Just as Section 1782 applications ask U.S. courts for judicial assistance in foreign proceedings, U.S. courts are able to issue Letters Rogatory or Letters of Request to foreign courts (including Danish courts) asking for the foreign court's judicial assistance in U.S. litigation.[2]  Danish courts have been receptive to such requests.  *Id*.  For instance, in *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, No.18-CV-10364-LGS-SDA, 2022 WL 2168916 (S.D.N.Y. June 16, 2022) and *Forsta AP-Fonden v. St. Jude Medical, Inc*., No.12-CV-3070 (JNE/HB), 2015 WL 13687909 (D. Minn. June 24, 2015), U.S. courts were able to issue Letters of Request and Letters Rogatory to Denmark pursuant to the Hague Convention for the purpose of obtaining international judicial assistance by Danish courts. Indeed, Denmark's Ministry of Justice advised the Applicant's Danish counsel that "the Ministry has experience in dealing with requests from U.S. courts for the taking of evidence in Denmark under the [Hague] Convention.  When we receive requests under the Convention, we examine whether the conditions for proceeding with the taking of evidence are met.  If this is the case, the case file is forwarded to the relevant court, which carries out the actual taking of evidence, after which the Ministry sends the court record and the case file back to the transmitting body."  Noer Decl. ¶ 32.

Denmark and its courts also provide wide-ranging cooperation to the United States and its courts through other means, and the United States reciprocates such cooperation and assistance.

---

[2] The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555 ("Hague Convention").

16

For instance, on June 25, 2003, the United States and the European Union entered into a Mutual Legal Assistance Agreement (Noer Decl., **Ex. 18** ("U.S.-EU Agreement")) and subsequently on June 23, 2005, the United States and Denmark entered into a Mutual Legal Assistance Instrument (Noer Decl., **Ex. 19** ("U.S.-Denmark Instrument")), which incorporates provisions of the U.S.-EU Agreement.  Noer Decl. ¶ 33.  The U.S.-Denmark Instrument sets out conditions relating to the provision of mutual legal assistance in criminal matters between Denmark and the United States and requires Denmark to provide legal assistance to the United States, upon request, with respect to serious offenses punishable under both U.S. and Danish law.  *Id*. §§ 1-6.  Specifically, the U.S.-Denmark Instrument provides that "Denmark shall provide assistance under this Article with respect to offenses punishable by a penalty involving deprivation of liberty or a detention order of a maximum period of at least four years in the requesting State and at least two years in the requested State.  *The United States of America shall provide assistance under this article with respect to money laundering* and terrorist activity punishable under the laws of both the requesting and requested States."  *Id*. at Annex, Art. 1(4) (emphasis added).  Further, this Instrument includes detailed provisions such as creating a mechanism for identifying bank accounts and transactions (*id.* at Annex, Art. 1); providing a mechanism for forming joint and investigative teams (*id.* at Annex, Art. 2); providing for the use of expedited communications (*id.* at Annex, Art. 4); and authorizing the provision of mutual legal assistance to certain administrative authorities (*id.* at Annex, Art. 5).

Additionally, in a 2014 case where U.S. authorities requested that Dutch citizens residing in Denmark be extradited for criminal prosecution in the United States (which request was granted and subsequently upheld), Denmark again provided judicial assistance to the United States.  Noer Decl. ¶ 34 & **Ex. 20** (Case U.2014.3448V) (referring to the U.S.-Denmark Extradition Treaty of

17

June 22, 1972, and ruling that the Denmark Ministry of Justice's decisions on the extradition of Dutch citizens residing in Denmark for criminal prosecution in the U.S. were legal).

In continuation of the *quid pro quo* cooperation and mutual provision of judicial assistance already existing between the United States and Denmark, it is clearly appropriate to grant the Application to perpetuate the reciprocity Congress hoped to achieve.

### 2. The Evidence Sought from Deutsche Bank U.S. Is Beyond the Danish Courts' Jurisdictional Reach

The first of the discretionary *Intel* factors – whether the discovery sought is outside the foreign tribunal's jurisdictional reach – also weighs strongly in the Applicant's favor.  As the Supreme Court has held, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542 U.S. at 264.  That is exactly the case here.  Because the Respondents are not parties or expected parties to the Danish Actions and Danish courts do not otherwise have jurisdiction over these German and U.S. entities (Noer Decl. ¶ 27), this Application satisfies the first *Intel* prong.  *See, e.g.*, *Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016) ("Indisputably, [the Respondents] are not parties to the [foreign] proceedings, and so the first *Intel* factor weighs in favor of discovery against them."); *In re Atvos Agroindus. Inv. S.A.*, 481 F. Supp. 3d 166, 174 (S.D.N.Y. 2020) (because "Respondents . . . are not parties . . . the first *Intel* factor weighs in favor of granting the Application as to them").[3]

---

[3] *Accord In re Operacion y Supervision de Hoteles*, No. 14 Misc. 82 (PGG), 2015 WL 82007, at *6 (S.D.N.Y. Jan. 6, 2015) ("Because [respondent] is not a party to the [Foreign] Proceeding and the foreign tribunal lacks jurisdiction to compel his testimony, analysis of the first *Intel* factor suggests that the subpoena should be enforced."); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014) (finding the first *Intel* factor weighs in favor of granting discovery because "[respondent] is not a participant in the UK proceeding"); *In re Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) ("[Respondent's] status as a non-party in the foreign actions weighs in favor of granting [the Applicant's 1782] application").

**3.    The Applicant Seeks Information Essential to Foreign Proceedings and Nothing Indicates the Foreign Tribunal Would Not Be Receptive to the U.S. Court's Assistance**

The second *Intel* factor weighs "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of . . . the court . . . abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264; *see also In re OOO Promnefstroy,* No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) (U.S. courts should consider how "a foreign legal system . . . might respond to § 1782 assistance from a United States court").[4]

Here, the discovery sought by the Applicant is for use in the Danish Actions which are pending proceedings before the City Court of the Copenhagen and the Eastern High Court in Denmark, both of which are civil trial courts hearing civil damages claims.  Noer Decl. ¶ 2.  In the Danish Actions, the Applicant seeks compensation for losses amounting to around $1 billion in total caused by Danske's violations of its disclosure obligations to inform the market in a timely manner about the extensive money laundering activities in Danske Estonia and its failure to implement and enforce necessary procedures for the prevention of money laundering.  *Id*. ¶ 13. Applicant intends to submit the requested evidence to the Danish courts in connection with the pending Danish Actions, as allowed under Danish civil procedure rules.  *Id*. ¶¶ 23, 25(2).  Because any evidence prospectively granted by this Court pursuant to the Application will be heard by Danish trial courts in order to determine Danske's liability and the requested evidence is particularly probative of a core issue in the Danish Actions – *i.e.* Danske's knowledge of the money laundering activities in Danske Estonia during the 2007-2015 period (*id*. ¶¶ 20, 22) – the second *Intel* factor favors granting the Application.

_____

[4] *Abrogated on other grounds by In re Top Matrix Holdings Ltd*., No. 18 Misc. 465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020).

Further, there is no reason to believe Danish courts would not be receptive to such evidence. Noer Decl. ¶ 30. To find otherwise would require "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782." *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) (citation omitted). Such "authoritative proof" must be in the form of a "clear directive" from the foreign court that it "would *reject* evidence obtained with the aid of section 1782." *Euromepa S.A.*, 51 F.3d at 1100 (emphasis added).[5] However, there is no such authoritative proof here. It is neither illegal under Danish law nor against Danish public policy to obtain evidence in the United States for use in Danish proceedings. Noer Decl. ¶ 28 & **Ex. 15** (Kang/Sandberg, Kurators indhentning af information og bevis i udlandet, *Erhvervsjuridisk Tidsskrift* 2013, at 21).

It is well-documented that Danish courts, in fact, *welcome* U.S. courts' judicial assistance. This is evidenced by their regular requests for such assistance[6]; and U.S. district courts have also consistently noted the Danish courts' receptivity, finding this factor to weigh in favor of granting Section 1782 discovery. Cho Decl. ¶ 23 & **Ex. L** (*Haarslev Indus., A/S v. Hans-Henrik Nissen*, No. 18-09009-MC-W-ODS, slip. op., at 6-7 (W.D. Mo. May 22, 2018) (rejecting respondent's motion to quash a subpoena based, in part, on finding that the Danish court was receptive to U.S. federal court judicial assistance under the second *Intel* factor)) and **Ex. M** (*Cal. State Tchrs. Ret. Sys. v. Novo Nordisk, Inc.*, No. CV1916458FLWDEA, 2020 WL 6336199, at \*7, n.11 (D.N.J. Oct.

---

[5] *See also In re Banco Santander (Brasil) S.A.,* No. 22-MC-00022 (ALC), 2022 WL 1546663, at \*2 (S.D.N.Y. Apr. 6, 2022) (granting discovery where "there is no indication that the Civil Court of São Paulo would be unreceptive to the discovery requests"); *In re Shervin Pishevar*, 439 F. Supp. 3d 290, 304 (S.D.N.Y. 2020) (granting discovery absent authoritative proof that the English courts would reject the evidence obtained).

[6] *See* Noer Decl. ¶¶ 30-31 & **Ex. 16** (*In re Req. for Int'l Jud. Assist. from the Dist. Ct. of Kolding, Denmark – Matter of Mette Lohse Skou Jensen v. Dwight Ferguson*, No. DK-7000, No. 15-MC-73 (W.D.N.C. May 4, 2015) (Dkt. #2 (Applicant's Mem.)) and **Ex. 17** (*In re Ltr. of Req. for Int'l Jud. Assist. from the Dist. Ct. of Lyngby, Denmark,* No. 13 CV00919 919 (N.D. Ill. Feb. 5, 2013) (Dkt. # 1 (*Ex Parte* Pet. of the U.S. for an Appt. of Comm'er to Provide Assistance to Foreign Trib. Pursuant to 28 U.S.C. § 1782))).

29, 2020) (finding second *Intel* factor weighs in favor of Section 1782 discovery because Magistrate Judge "found that '[n]either party . . . presented any information that would indicate that the Danish Court is not receptive to discovery obtained in the United States'").

Thus, there is no doubt that the second *Intel* factor also favors granting the Application.

### 4. This Application Does Not Circumvent Danish Proof-Gathering Restrictions or Other Policies

The third *Intel* factor considers if the Application seeks to circumvent foreign proof-gathering restrictions or other policies of Denmark or the United States. *Intel,* 542 U.S. at 265. It asks, in essence, whether it is a good faith effort to access probative and highly relevant evidence for use abroad. *See In re YS GM Marfin II LLC*, No. 20 MISC. 182 (PGG), 2022 WL 624291, at *9-10 (S.D.N.Y. Mar. 2, 2022) (holding that "[i]n connection with the third Intel factor, courts consider whether the application is brought in good faith" and, after analysis, finding "no evidence of bad faith" and thus granting the applicants' motion); *see also Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 8-CV-269, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) (third *Intel* factor favors discovery where nothing suggests information is sought with less than good faith belief that discovery will be helpful); *In re Schottdorf*, No. 8-CV-269, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006) ("Absent any indication of bad faith," an attempt to acquire discovery that an applicant is unable to obtain abroad is not "a vehicle to end-run foreign proof-gathering restrictions").

It is not bad faith to seek information in the United States that is not discoverable in the country where the foreign case is pending. As the Second Circuit clarified in *Mees*:

> While we have instructed that "district judges may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion under section 1782," *Foden v. Gianoli Aldunate*, 3 F.3d 54, 60 (2d Cir. 1993), that observation does not "authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, but simply . . .

allow[s] consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application.

*Mees*, 793 F.3d at 303 (quoting *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)); *accord In re BNP Paribas Jersey Tr. Corp.*, No. 18-MC-00047, 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018).  Nor does the third factor require that the Applicant show it has attempted to obtain the requested information from the foreign tribunal first.  *See Mees*, 793 F.3d at 303 (holding that there is "no support in the plain language of the statute and runs counter to its express purposes" to impose such a "quasi-exhaustion requirement"); *accord In re Pishevar*, 439 F. Supp. 3d at 304; *In re Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 167 (S.D.N.Y. 2016).  Interested parties may also seek discovery pursuant to Section 1782 regardless of the status of the foreign proceedings.  *In re Gorsoan Ltd.*, No. 13 Misc. 397 (PGG), 2014 WL 7232262, at *9 (S.D.N.Y. Dec. 10, 2014).  There is no need to wait until the evidentiary stage of the foreign proceeding.  *In re Servicio Pan Americano*, 354 F. Supp. 2d 269, 273 (S.D.N.Y. 2004).

Here, there is nothing to suggest that the requested discovery seeks to circumvent any Danish or U.S. policies or is otherwise in bad faith.  The fact that a foreign tribunal has a more restrictive scope of discovery than that available in the United States, which is typically the case, is insufficient to demonstrate that the applicant is trying to circumvent foreign public policies.  *See Mees*, 793 F.3d at 303 ("That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means.").  For an application to rise to the level of circumvention of proof-gathering restrictions, the foreign rules must be such as to "*prohibit* the acquisition or use of certain materials," not merely fail to facilitate investigation of claims through mandatory disclosures.  *Id*. n.20 (emphasis original); *accord Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not

necessarily signal objection to aid from United States federal courts.").  There is clearly no such prohibition in Denmark against the requested discovery.  Noer Decl. ¶ 25(3)-(4) (citing Sections 178, 298-300 of the Danish Administration of Justice Act ("AJA") which permit limited discovery) & **Ex. 11** (Section 178 AJA) and **Ex. 8** (Sections 298-300 AJA).

The use for which the Applicant seeks to obtain discovery from Deutsche Bank U.S. is to support and prove its claim in the Danish Actions.  The information it seeks is in the hands of parties located in the United States (in this particular judicial district); is directly relevant to the Danish Actions; and is important to determine, quantify and apportion liability in the Danish Actions.  Since Danish courts lack jurisdiction to compel Deutsche Bank U.S. to provide the requested information, it is completely understandable and justifiable the Applicant would seek to acquire it through other channels such as Section 1782.  Because it clearly does not circumvent foreign proof-gathering restrictions or other policies of Denmark or the United States, the Application satisfies the third *Intel* prong.

### 5.    The Discovery Sought Is Narrowly Tailored to the Needs of the Danish Actions, and Is Neither Burdensome Nor Unduly Intrusive

The fourth and final *Intel* factor asks district courts to examine whether the applicant's discovery requests are "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  In making this determination, courts must assess whether the requested discovery is "sufficiently tailored to the litigation issues for which production is sought."  *In re Schottdorf*, 2006 WL 3844464, at *8.  Even if the scope of discovery is found to be intrusive or burdensome, however, the court always retains "broad authority . . . to fashion discovery orders issued pursuant to section 1782,"[7] and "it is far

---

[7] *In re Sveaas*, 249 F.R.D. at 106 (citing *In re Malev Hungarian Airlines,* 964 F.2d 97, 102 (2d Cir. 1992)) (internal quotation omitted).

preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Mees*, 793 F.3d at 302 (internal quotation marks and citation omitted).

The present document requests and deposition topics are relevant and narrowly tailored to fall within the broad scope of federal discovery allowed in the United States.  *See* Cho Decl., **Exs. H**, **I**, **J** and **K** (Subpoenas with Schedule A's).  "The proper scope of the discovery sought under section 1782 . . . is governed by Federal Rule 26(b)," *In re Sveaas*, 249 F.R.D. at 106, and thus extends to all relevant evidence, *i.e.* "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).  Applicant's discovery requests here are critical and closely tailored to the Applicant's evidentiary needs in all eight test cases (including  the Applicant's case) that the High Court has selected to proceed, the outcomes of which will be of importance to the hundreds of other cases in the Danish Actions that remain stayed pending resolution of the test cases.  Noer Decl. ¶ 20.

**Request #1** seeks documents related to communications between Deutsche Bank and Danske concerning or related to suspicious transactions involving Danske Estonia's non-resident customer accounts, or mentioning actual or potential instances of money laundering through Danske Estonia, during the period October 1, 2007 through October 7, 2015.  **Request #2** involves documents regarding communications between Deutsche Bank and Danske concerning or related to the high volume of AML alerts involving Danske Estonia's customers or the high-risk market segments serviced by Danske Estonia during the period October 1, 2007 through October 7, 2015.  **Request #3** seeks complete files and all information produced by Deutsche Bank U.S. to the DFS

regarding its investigation into Deutsche Bank's involvement with Danske Estonia.

These requests are neither burdensome nor unduly intrusive because – during its years-long cooperation with New York State's DFS in its investigation into Deutsche Bank's knowledge of extensive money laundering activities at Danske Estonia (the latter being the exact same factual basis as the Danish Actions) – Deutsche Bank has already done the vast majority of the work that would be required to respond to the Applicant's discovery requests, if granted.  In its Consent Order, the DFS applauded Respondents for their "exemplary cooperation" which consisted of "conducting comprehensive and thorough internal investigations" and "collecting, analyzing and producing numerous documents and other information to the [DFS]."  Cho Decl., **Ex. A** (Consent Order) ¶ 109.  Here, for the most part, Respondents simply have to recreate the productions they already made to the DFS and review those documents and rely on the results of their internal investigations to prepare for the requested depositions.  They do not need to start from square one by any means since most of their work has already been done due to the commendable efforts of the DFS and Respondents' "exemplary" cooperation with those efforts.  Therefore, it is clear that the Application satisfies the final *Intel* prong.[8]

## IV.   CONCLUSION

For the foregoing reasons, the Applicant respectfully requests that the Court enter an order, pursuant to 28 U.S.C. § 1782 and Rules 26, 30, and 45 of the Federal Rules of Civil Procedure, granting Applicant leave to serve the Subpoenas on the Respondents.

---

[8] If the Court were to find the Requests unduly intrusive or burdensome, Applicant respectfully asks the Court to use its discretion to "trim[]" the Requests, *Intel*, 542 U.S. at 265, or "issu[e] a closely tailored discovery order," *Mees*, 793 F.3d at 302, rather than reject them wholesale.

Dated:   September 29, 2023
         New York, New York

                              Respectfully submitted,

                       By:   */s/* Olav A. Haazen

                              **GRANT & EISENHOFER P.A.**
                              Olav A. Haazen (OH7788)
                              Alice Y. Cho (AC0728)
                              Romina Corral (5755376)
                              485 Lexington Ave.
                              New York, NY 10017
                              Tel: (646) 722-8500
                              ohaazen@gelaw.com
                              acho@gelaw.com
                              rcorral@gelaw.com

                              *Attorneys for Applicant*

26